UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| 229 IRON STREET LCC,<br><br>        *Plaintiff*,<br><br>v.<br><br>AMGUARD INSURANCE CO.,<br><br>        *Defendant*. | Civil Action No.<br>3:25-cv-01130<br><br><br><br>July 15, 2025 |

### COMPLAINT

Plaintiff 229 Iron Street LLC ("Plaintiff") files this Complaint against Defendant AmGUARD Insurance Company ("Defendant").

### NATURE OF THE ACTION

1. Plaintiff brings this Complaint to recover insurance policy benefits and damages from Defendant, its property insurance carrier, based on Defendant's wholly unjustifiable and bad-faith refusal to cover certain water-related damage that arose at Plaintiffs' insured premises more commonly known 229 Iron Street, Ledyard, Connecticut 06339-1572 (the "Premises") following a second-floor bathroom water overflow incident on or about July 15, 2023.

2. The damage occurred after the Premise's second-floor bathroom bathtub overflowed, resulting in substantial water damage to that situs as well as other adjacent house areas, causing extensive damage to the flooring, interior fixtures and other items.

3. Fortunately, Plaintiff had purchased property and liability insurance— at significant expense—to protect against precisely these types of unforeseeable and

1

unpreventable losses, and they promptly reported claims (for both the property and liability coverages) to Defendant.

4. Plaintiff submitted a timely notice of claim to Defendant, who accepted coverage of the claim.

5. In connection with the 2023 loss, Plaintiff engaged a public adjuster to assist in the claims handling process.

6. On or about January 28, 2025, Plaintiff's public adjuster submitted a loss estimation of $102,833.27. To date, Defendant has only paid out $53,818.46 of the claimed loss.

7. In the interim, a new loss was identified at the Premises on February 6, 2025, timely notice of which was provided to Defendant, which accepted coverage pursuant to a reservation of rights letter pending resolution of its investigation of the loss.

8. The situs of the new loss corresponded with that of the 2023 overflow incident, which, based on the reservation of rights, entitled Defendant to continues its claim investigation and effectively precluded repairs of the 2023 loss to avoid tampering with Defendant's 2025 loss investigation. During this delay, however, building materials to repair some of the 2023 loss damage were likewise damaged by the 2025 loss.

9. On or about May 30, 2025, the successor adjuster submitted a total claim amount of $113,148.94 with respect to the 2023 dwelling loss, requesting additional funds from Defendant to cover items needed to complete repairs on the Premises that were not included in the initial insurance estimate of January 2025.

10. As Defendant continued its investigation of the 2023 and 2025 loss, Plaintiff's initial and successor public adjusters proposed agreements to toll the limitations period on the 2023 claim so as not to disrupt Defendant's claim processing – an industry standard procedure.

11. Defendant informed Plaintiff that it would not grant the tolling request on June 13, 2025.

12. Following that, on or about June 27, 2025, Defendant approved a loss estimate of $53,818.46.

13. Thereafter, on or about July 9, 2025, Defendant engaged a flooring expert to assess the repairability of the Premises 200-plus-year-old hardwood floors.

14. Plaintiff and Defendant continue to work on resolution of the insurance claims, but, because Defendant rejected the tolling agreement, Plaintiff has been forced to file suit.

15. Through its handling of Plaintiffs' claims, Defendant has engaged in unfair, result-oriented claim settlement practices aimed at avoiding coverage by any means necessary. Defendant thereby has breached the terms of Plaintiffs' policy, acted in bad faith, and violated the Connecticut Unfair Insurance Practices Act and Unfair Trade Practices Act. Plaintiff brings this action to hold Defendant accountable for its wrongful conduct.

## PARTIES

16. The Plaintiff, 229 Iron St LLC, is a limited liability company organized under Connecticut law. Its principal place of business is in Bronx, New York.

17. Defendant AmGUARD is an insurance company organized under Pennsylvania law. Its principal place of business is in Wilkes-Barre- PA. It is a

licensed and approved insurance company in the State of Connecticut.

## JURISDICTION AND VENUE

18. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000 (exclusive of interest and costs).

19. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to Plaintiff's causes of action occurred in this district.

## BACKGROUND

### A.  **Plaintiffs and the Water Damage 2023 Loss**

20. Plaintiff is a Connecticut Limited Liability engaged in the business of owning and leasing real estate holdings.

21. Plaintiff's corporate headquarters is in Bronx, New York.

22. On or about August 17, 2021, Plaintiff became the record owner of the Premises.

23. On or about July 15, 2023, Plaintiff discovered significant water damage apparently caused by a second-floor bathroom water overflow incident. The damage affected various areas and items of the Premises' first and second floors.

24. [Detail specific damage].

25. Pursuant to Plaintiff's first public adjuster, as of January 28, 2025, the estimated costs to repair the water damage was $102,833.27.

26. Shortly thereafter, on or about February 6, 2025, the Premises suffered additional damage, notice of which was timely given by Plaintiff and coverage acknowledged, under a reservation of rights, by Defendant.

27. Because the two (2) loss claims affected the same Premises, Defendant investigated each loss to determine, among other things, source of loss.

28. Thus, on or about May 30, 2025, Plaintiff's successor public adjuster submitted a total claim amount of $113,148.94 with respect to the 2023 dwelling loss.

29. As of June 27, 2025, Defendant has approved a damage estimate of $53,818.46.

30. Because Defendant accepted coverage of the 2025 case under a reservation of rights, its investigation is supposedly ongoing, and Defendant has not covered the full amount of the covered damages incurred by Plaintiff.

### B.  Plaintiff's Property Insurance Policy

31. Plaintiff sought insurance coverage for the water damage under a commercial property insurance policy that it had purchased from Defendant, with policy number TWHO433872 (the "Policy").

32. Defendant is a subsidiary of Berkshire Hathaway GUARD Insurance Companies, which are owned by Berkshire Hathaway Inc. – an A+ Superior rated company by A.M. Best.

33. The Policy has a coverage period of May 27, 2023 to May 27, 2024, and it specifically identifies the Premises as an insured location.

34. Pursuant to the Policy's Property Coverage Form, the Policy provides up to $663,244 in "Dwelling" coverage for the Premises and up to $198,973 in "Loss of Use" coverage.  The "Dwelling" coverage applies (in relevant part) to "[t]he dwelling on the 'residence premises,' including structures attached" thereto.

35. The "Loss of Use" coverage comprises the total limits for the coverage of

5

"Additional Living Expenses," "Fair Rental Value," and "Civil Authority Prohibits Use."

36. Defendant accepted coverage for the 2023 dwelling loss.

37. Plaintiff has made every effort to cooperate with Defendant in good faith, including consistent communication and sharing of pertinent claim information. Defendant has completed its coverage investigation, but has unreasonably delayed its scope investigation, which has deprived Plaintiff of insurance benefits to which it is duly entitled under the Policy.

### C. Defendant's Failure to Fully Cover The Dwelling Loss

39. In or about July, 2023, Plaintiff noticed a claim for the water damage to Defendant and thereafter fully cooperated with Defendant, including by communicating with and providing underlying damage documentation to Defendant's claims adjuster(s) consistently since the original notice.

40. As the parties continued to discuss and negotiate a resolution to the 2023 loss claim, on or about June 6, 2025, Defendant confirmed it had denied a February 2025 tolling request from Plaintiff's predecessor public adjuster, and, on June 13, 2025, Defendant informed Plaintiff that the second tolling request was likewise denied.

41. Without a tolling of the limitations period, Defendant has obstinately refused to cover the entirety of Plaintiff's claim while its saunters through its investigative process that has spanned nearly two years to date, and, despite Plaintiff frequently and timely providing Defendant what additional information it supposedly needs to finalize its review, no resolution of the claim has manifested, and Defendant has failed to fully cover Plaintiff's losses that unambiguously fall within the plain

6

coverage provisions of the Policy.

42. Moreover, Defendant's inexplicable investigative delays have deprived Plaintiff of insurance benefits, increased Loss of Use damage suffered by Plaintiff.

### D. Plaintiff's Damages

43. Through its slow-moving investigation, rejection of a tolling agreement and failure to cover the entirety of Plaintiff's property damage claim, Defendant has deprived Plaintiffs of roughly $75,000 in lost policy benefits, which reflects the amount of the necessary costs to repair the water damage that occurred at Plaintiff's insured Premises.

44. Through its slow-moving investigation, rejection of a tolling agreement and failure to cover the entirety of Plaintiff's property damage claim, Defendant has deprived Plaintiff of additional lost policy benefits in the form of lost coverage for the necessary costs to repair the water damage.

45. Defendant's slow-moving investigation, rejection of a tolling agreement and failure to cover the entirety of Plaintiff's property damage claim has also forced Plaintiff to incur attorney fees and costs in pursuit of the coverage that it is entitled to receive under the Policy, and which it otherwise would not have incurred had Defendant honored its obligations and agreed to cover Plaintiff's claim.

46. Plaintiff has made every effort to cooperate with Defendant in good faith, including consistent communication and sharing of pertinent claim information. But Defendant has refused to timely complete its investigation in reciprocation of Plaintiff's good faith and ultimately left Plaintiff with no choice but to seek judicial intervention.

## COUNT 1: BREACH OF CONTRACT

47. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

48. As detailed above, Plaintiff's claims for property insurance coverage for the water damage that resulted from the second-floor bathroom overflow event in July 2023 is covered by the Policy and does not fall within any of the Policy's exclusions or coverage limitations.

49. By failing to complete its investigation and fully compensate Plaintiff for its claim, Defendant has breached the Policy and has thereby caused Plaintiff to suffer substantial damages, which continue to amount.

50. As a result of Defendant's breach or breaches of the Policy, Plaintiff is entitled to recover its actual damages, including but not limited to its out-of-pocket, reliance, and/or benefit-of- the-bargain damages.

## COUNT 2: BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

51. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

52. Under Connecticut law, Defendant's common law duties under the Policy include a duty of good faith and fair dealing.

53. By failing to timely investigate, to agree to a tolling of limitation period and to fully compensate Plaintiff's claim for coverage under the Policy in the manner detailed above, Defendant has breached its duty of good faith and fair dealing, and thereby has caused Plaintiff to suffer and continue to suffer substantial damages (the exact amount of which will be shown at trial).

54. As a result of Defendant's breach of its duty of good faith and fair dealing, Plaintiff is entitled to recover its actual damages, including but not limited to its out-of- pocket, reliance, and/or benefit-of-the-bargain damages.

55. Defendant's breach of its duty of good faith and fair dealing also entitles Plaintiff to recover its reasonable attorney fees and expenses.

### COUNT 3: VIOLATIONS OF THE CONNECTICUT UNFAIR TRADE PRACTICES ACT AND THE CONNECTICUT UNFAIR INSURANCE PRACTICES ACT

56. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

57. Defendant is in the business of providing insurance, including to businesses in Connecticut.

58. Defendant's business is consumer-oriented in nature and occurs within the trade and commerce of Connecticut.

59. Although Defendant purported to provide coverage to Plaintiff through the Policy for property damage, such as the water damage described herein, that coverage is and has been proven illusory.

60. Defendant's conduct in purporting to provide coverage but then engaging in a dilatory investigation without agreeing to toll the claim's limitations period constitutes unfair competition and an unfair and deceptive act and practice under Connecticut law.

61. By effectively inducing Connecticut consumers to purchase its insurance products—through its promises of coverage that it has no intention of providing—Defendant has acted oppressively and unscrupulously and has thereby caused substantial injury to businesses in Connecticut.

62. By failing to timely investigate, agree to tolling the limitations period and fully cover Plaintiff's dwelling loss under the Policy in the manner detailed above, Defendant also has engaged in unfair claim settlement practices, in violation of Chapters 704 and 735a of the Connecticut General Statutes, including but not limited to Sections 38a- 816(6) and 42-110b, and has thereby caused Plaintiff to suffer substantial damages (the exact amount of which will be shown at trial).

63. The only benefits of Defendant's practices, as alleged herein, are to Defendant's own commercial interests.

64. Defendant's violations of Chapters 704 and 735a entitle Plaintiff to recover all actual damages, plus reasonable attorney fees and expenses.

## COUNT 4: REQUEST FOR DECLARATORY JUDGMENT

65. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

66. An actual controversy exists between the parties concerning Defendant's obligation to provide coverage under the Policy for the water damage described herein. In accordance with 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment to resolve this dispute and confirm the parties' respective rights and obligations.

## CONDITIONS PRECEDENT

67. All conditions precedent to recovery of the damages sought herein have been performed or have occurred.

## JURY DEMAND

68. Plaintiff hereby demands a jury trial on all issues so triable under applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that, upon a final hearing of this cause, the Court enter a judgment for Plaintiff and against Defendant that awards to Plaintiff all compensatory damages sought herein; reasonable attorney's fees and costs of suit; pre- and post- judgment interest as provided by law; and such other and further relief to which Plaintiff may be justly entitled.

PLAINTIFF, 229 IRON ST LLC

BY/ss/ Dennis M. Durao
Dennis M. Durao
Federal Bar No.: ct29271
Karsten & Tallberg, LLC
500 Enterprise Drive, Ste. 4B
Rocky Hill, CT 06067
T: (860)233-5600
F: (860)233-5800
ddurao@kt-lawfirm.com